**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TODD OKIMOTO, Derivatively and On Behalf of Nominal Defendant LONGWEI PETROLEUM INVESTMENT HOLDING LIMITED<br><br>      Plaintiff,<br><br>         v.<br><br>YOUNGJUN CAI, JAMES CRANE, MICHAEL TOUPS, YONGPING XUE, DOUGLAS COLE, GERALD DECICCIO, DORA DONG, CHILD, VAN WAGONER & BRADSHAW, PLLC, and ANDERSON BRADSHAW PLLC,<br><br>      Defendants,<br><br>LONGWEI PETROLEUM INVESTMENT HOLDING LIMITED, a Colorado Corporation,<br><br>      Nominal Defendant. | **Case No.: 13-cv-4494**<br><br><br><br>**AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Todd Okimoto ("Plaintiff"), derivatively and on behalf of nominal defendant Longwei Petroleum Investment Holding Limited ("Longwei" or the "Company"), by and through his attorneys, alleges the following based upon his personal knowledge as to himself and his own acts, and as to all other matters upon information and belief based upon, inter alia, the investigation made by and through his attorneys:

<u>**NATURE OF THE ACTION**</u>

1.    This shareholder derivative action brought for the benefit of Nominal Defendant Longwei against Defendants Cai Youngjun, James Crane, Michael Toups, Yongping Xue, Douglas Cole, Gerald DeCiccio, Dora Dong, Child, Van Wagoner & Bradshaw, PLLC ("CVWB") and Anderson Bradshaw PLLC ("Anderson Bradshaw")for

violations of fiduciary duties owed to Longwei from May 17, 2010 to January 3, 2013 (the "Relevant Period")

**SUMMARY AND OVERVIEW**

2.      Nominal Defendant Longwei is a Colorado Corporation headquartered in Shanxi, China that engages in the wholesale distribution of finished petroleum products, including its transportation, storage and sale, in the People's Republic of China (the "PRC").

3.      During the Relevant Period, Longwei publicized record results and growth.

4.      In truth, Defendants greatly overstated Longwei's revenue and profits.

5.      In addition to greatly overstating Longwei's revenue and profits, Defendants also falsely assured the investing public on July 2, 2012 that there were no material differences between its PRC subsidiary tax filings and U.S. Securities and Exchange Commission ("SEC") filings (the "Tax Reconciliation Report").

6.      On January 3, 2013, a report published on the Internet by GeoInvesting.com alleged that Longwei's financial performance has been greatly exaggerated as the Company has been attributing substantial product sales to facilities that were in fact either idled or minimally active. Consequently, the GeoInvesting.com report concluded that Longwei's purported business operations are "massively overstated."

7.      The GeoInvesting.com report also identified other red flags with Longwei, including: (i) the failure to disclose a $32 million investment in a tourism project and a planned investment of as much as $222 million overall to it; and (ii) major inconsistencies between the Tax Reconciliation Report and Longwei's prior SEC filing – casting serious doubts as to the authenticity and truth of the Tax Reconciliation Report.

8.     In response to this news, shares of Longwei fell $1.68 or approximately 72% from its previous close to $0.62 per share.

**JURISDICTION AND VENUE**

9.     Jurisdiction is conferred by 28 U.S.C. § 1332. There is complete diversity among the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Plaintiff is a citizen of Hawaii. None of the Defendants are citizens of Hawaii.

10.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein—including the Individual Defendants' preparation and/or dissemination of false or misleading information—occurred in this district, and the Individual Defendants have received substantial compensation in this district by engaging in numerous activities that had an effect in this district. Specifically, the Company's stock listing is maintained and traded on the NYSE, which is located in this District. The Company's investor relations are handled by Weitian Group LLC, located in New York City. The Company's former legal counsel is Sichenzia Ross Friedman Ference LLP, which assisted the Company in issuing public statements and SEC filings during the relevant period and is also located in New York City.  In addition, the Company also participated in various investor and technology conferences in this District during the relevant period, including: the RedChip Midsummer New York Equities Conference held on July 21, 2010; the Rodman & Renshaw Annual Global Investment Conference on September 11-13, 2011; and the RedChip Small-Cap New York Conference on April 26, 2012.

11.     Each Defendant has minimum contacts with the U.S. and New York, as they have contracted in New York and the U.S., or have frequently traveled here, on Longwei business and otherwise, or have authorized acts and actions which have had a sufficient impact in the U.S. or on Longwei's shareholders and investors residing here to justify the exercise of jurisdiction over them.

**PARTIES**

12.     Plaintiff Todd Okimoto ("Plaintiff" or "Okimoto") is, and has been an owner of Longwei common stock throughout the Relevant Period. Plaintiff is a citizen and resident of Hawaii.

13.     Nominal Defendant Longwei is a Colorado Corporation and headquartered in Shanxi, China. It engages in the wholesale distribution of finished petroleum products, such as diesel, gasoline, fuel oil, and solvents from various petroleum refineries, to commercial, industrial, retail and wholesale customers in the PRC. In addition to the transportation, storage, and sale of finished petroleum products, the Company also serves as a purchasing agent for intermediaries and operator of retail gas stations. During the Relevant Period the Company's stock was listed on the NYSE ticker symbol "LPH."

14.     Throughout significant portions of the Relevant Period, the Company maintained a U.S. office without a listed address. Upon information and belief, it is located in the greater Tampa–St. Petersburg–Clearwater area of Florida.

15.     Defendant Youngjun Cai ("Cai") is and was at all relevant times, the Company's Chief Executive Officer ("CEO") and Chairman. Upon information and belief, Cai is a citizen of the PRC.

16.     Defendant James Crane ("Crane") was the Company's Chief Financial Officer ("CFO") until he suddenly resigned on June 16, 2010. Defendant Crane was formerly the CFO of Subaye, Inc., a reputed fraud. Upon information and belief, Crane is a citizen of Massachusetts.

17.     Defendant Michael Toups ("Toups") is, and has been the Company's CFO since June 23, 2010. Upon information and belief, Toups is a citizen of the Florida.

18.     Defendant Yongping Xue ("Y. Xue") is and was at all relevant times, the Company's Secretary, Treasurer, and Director. Upon information and belief, Y. Xue is a citizen of the PRC.

19.     Defendant Douglas Cole ("Cole") was at all relevant times, a Director of the Company and a member of the Compensation, Nominating and Audit committee. Cole abruptly resigned as a Director on January 28, 2013. Upon information and belief, Cole is a citizen of California.

20.     Defendant Gerald DeCiccio ("DeCiccio") was until December 15, 2011, a Director of the Company and a member of the Compensation, Nominating and Audit committee. DeCiccio did not stand for re-election at the 2011 Annual meeting of Shareholders. Defendant DeCiccio was formerly the CFO of Worldwide Energy & Manufacturing USA, Inc., a reputed fraud. Upon information and belief, Cole is a citizen of California.

21.     Defendant Dora Dong ("Dong") is and has been since December 15, 2011, a Director of the Company and a member of the Compensation, Nominating and Audit committee. Upon information and belief, Dong is a citizen of California.

22.     Defendants Cai, Crane, Toups, Y. Xue, Cole, DeCiccio, and Dong are referred to herein as the "Individual Defendants."

23.     Defendant CVWB at all relevant times was a certified public accountant firm that served as Longwei's principal accountant and auditor until it changed its accounting practice and name on or about August 1, 2012 to Anderson Bradshaw.

24.     Defendant Anderson Bradshaw is a certified public accountant firm and the successor in interest to Defendant CVWB. Anderson & Bradshaw served as Longwei's principal account and auditor from August 1, 2012 until its resignation on May 30, 2013.

25.     Defendants CVWB and Anderson & Bradshaw are referred to herein as the "Auditor Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

26.     By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust, loyalty, and due care, and were and/or are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Individual Defendants were and/or are required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interests or benefits. Each director and officer of the Company owed to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligation of fair dealing.

27. Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

28. To discharge their duties, the officers and directors of Longwei were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial and operational affairs of Longwei. By virtue of such duties, the officers and directors of Longwei were required to, among other things:

(a) manage, conduct, supervise and direct the business and internal affairs of Longwei in accordance with the laws and regulations of Colorado, the United States, and pursuant to the charter and bylaws of Longwei;

(b) neither violate, nor knowingly permit any officer, director or employee of Longwei to violate applicable laws, rules and regulations;

(c) remain informed as to the status of Longwei's operations, and upon receipt of notice or information of imprudent or unsound practices, to make a reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as are necessary to comply with applicable laws and regulations;

(d) establish and maintain systematic and accurate records and reports of the business and internal affairs of Longwei and procedures for the reporting of the business and internal affairs to the Board of Directors and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)     maintain and implement an adequate and functioning system of internal legal, financial and management controls, such that Longwei's operations would comply with all laws, Longwei's financial statements and information filed with U.S. financial regulators and disseminated to the investing public and to Longwei shareholders in Annual Reports would be accurate, and the actions of its directors would be in accordance with all applicable laws; and

(f)     exercise reasonable control and supervision over the public statements to the securities markets, investors and public shareholders of Longwei by the officers and employees of Longwei and any other reports or other information required by law from Longwei and to examine and evaluate any reports of examinations, audits or other financial information concerning the financial affairs of Longwei and to make full and accurate disclosure of all material facts concerning, inter alia, each of the subjects and duties set forth above.

29.     During the Relevant Period, the Individual Defendants, as senior executive officers and/or directors of Longwei, were privy to confidential and proprietary information concerning Longwei, its operations, products, business relationships, insider deals, financial condition, and future prospects via access to internal corporate documents, conversations, and connections with other corporate officers and employees, attendance at management and board of directors meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

30.     The Individual Defendants are liable as direct participants in, and as co-conspirators, with respect to the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as senior executive officers and/or directors had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to shareholders and the public. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading, prior to or shortly after their issuance, and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to, and did, commit the fraudulent acts alleged herein.

31.     As senior executive officers and/or directors of a publicly-traded company whose common stock was, and continues to be, registered with the SEC pursuant to the Exchange Act, trades on the NYSE under the ticker symbol "LPH," the Individual Defendants were, and continue to be, governed by the federal securities laws, and had a duty to disseminate accurate and truthful information with respect to Longwei's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings, and present and future business prospects; and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of Longwei's common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Relevant Period violated these specific requirements and obligations. Accordingly,

Individual Defendant's breached their fiduciary duties by causing and/or recklessly permitting violations of federal securities laws.

## The Company's Code of Business Conduct and Ethics

32.     Longwei's Code of Ethics and Business Conduct (the "Code of Ethics") governs the Company's directors and officers, among others. It states that a goal of the Company "is to promote professional and ethical conduct with respect to its business practices worldwide."

33.     With regard to keeping accurate and complete records, the Code of Ethics specifically provides:

> We must maintain accurate and complete Company records. Transactions between the Company and outside individuals and organizations must be promptly and accurately entered in our books in accordance with generally accepted accounting practices and principles. No one should rationalize or even consider misrepresenting facts or falsifying records. It will not be tolerated and will result in disciplinary action.

34.     With regard to complying with all securities laws, the Code of Ethics specifically provides:

> In our role as a publicly owned company, we must always be alert to and comply with the securities laws and regulations of the United States, China, and other countries where the Company may conduct its business.

35.     With regard to being timely and accurate in all public reports, the Code of Ethics specifically provides:

> As a public company, we must be fair and accurate in all reports filed with the United States Securities and Exchange Commission. Our officers, directors and management are responsible for ensuring that all reports are filed in a timely manner and that they fairly present the financial condition and operating results of the Company.
>
> Securities laws are vigorously enforced. Violations may result in severe penalties including significant fines against the Company. There may also be

sanctions against individual employees including substantial fines and prison sentences.

The Chief Executive Officer and Chief Financial Officer will certify to the accuracy of reports filed with the SEC in accordance with the Sarbanes-Oxley Act of 2002. Officers and Directors who knowingly or willingly make false certifications may be subject to criminal penalties or sanctions including fines and imprisonment.

36.     Throughout the Relevant Period, in violation of the Code of Ethics, the Individual Defendants (as key officers and as members of the Company's Board) conducted little, if any, oversight of the Company's internal controls over accounting and financial reporting and consciously disregarded their duties to monitor such controls and accounting. The Individual Defendants' complete failure to perform their duties in good faith resulted in fraudulent accounting practices and subsequent misrepresentations to the SEC, the investing public, and the Company's shareholders.

### Audit Committee Charter

37.     During the Relevant Period, Defendants Deciccio, Cole, and Dong served on the Company's Audit committee. As members of the Audit Committee, they had an affirmative duty of oversight and responsibility for the integrity of Longwei's financial reporting.

38.     The Company's 2012 Proxy Statement specifically states that:

The Audit Committee assists our board in monitoring:

- our accounting, auditing, and financial reporting processes;
- the integrity of our financial statements;
- internal controls and procedures designed to promote our compliance with accounting standards and applicable laws and regulations; and
- the appointment and evaluation of the qualifications and independence of our independent auditors.

39.     The Company's Audit Committee is governed by the Audit Committee Charter, which provides that in addition to assisting the Company's Board with overseeing the Company's management, the Audit Committee is charged with overseeing the accounting and financial reporting processes of Longwei and the audits of the Company's financial statements.

40.     Specifically, the Audit Committee Charter provides that:

To fulfill its responsibilities and duties, the Committee shall:

**Document Review**

1. Review and assess the adequacy of this Charter periodically as conditions dictate, but at least annually (and update this Charter if and when appropriate).

2. Review with representatives of management and representatives of the independent accounting firm the Corporation's audited annual financial statements prior to their filing as part of the Annual Report on Form 10-K. After such review and discussion, the Committee shall recommend to the Board of Directors whether such audited financial statements should be published in the Corporation's Annual Report on Form 10-K. The Committee shall also review the Corporation's quarterly financial statements prior to their inclusion in the Corporation's Quarterly Reports on Form 10-Q.

3. Instruct the independent accounting firm to review the Corporation's interim financial statements prior to their inclusion in the Corporation's Quarterly Reports on Form 10-Q.

**Independent Accounting Firm**

4. The Committee shall be directly responsible for the appointment, compensation, retention and oversight of the work of any independent accounting firm engaged by the Corporation for the purpose of preparing or issuing an audit report or performing other audit, review or attest services or any other related work.

The authority of the Committee shall include ultimate authority to approve all audit engagement fees and terms. The Committee shall have the ultimate authority and responsibility to appoint, evaluate and, when warranted, replace, such independent accounting firm (or to recommend such replacement for shareholder approval in any proxy statement).

5. Resolve any disagreements between management and the independent accounting firm as to financial reporting matters.

6. Instruct the independent accounting firm that it should report directly to the Committee on matters pertaining to the work performed during its engagement and on matters required by applicable Regulatory Body rules and regulations.

7. On an annual basis, receive from the independent accounting firm a formal written statement identifying all relationships between the independent accounting firm and the Corporation consistent with Independence Standards Board Standard 1, as it may be modified or supplemented. The Committee shall actively engage in a dialogue with the independent accounting firm as to any disclosed relationships or services that may impact the independent accounting firm's objectivity and independence. The Committee shall take appropriate action to oversee the independence of the independent accounting firm.

8. On an annual basis, discuss with representatives of the independent accounting firm the matters required to be discussed by Statement on Auditing Standards 61, as it may be modified or supplemented.

9. Meet with the independent accounting firm prior to the audit to review the planning and staffing of the audit and consider whether or not to approve the auditing services proposed to be provided.

10. Evaluate the performance of the independent accounting firm and consider the discharge of the independent accounting firm when circumstances warrant. The independent accounting firm shall be ultimately accountable to the Committee.

11. Oversee the rotation of the lead (or coordinating) audit partner having primary responsibility for the audit and the audit partner responsible for reviewing the audit at least once every five years, and oversee the rotation of other audit partners, in accordance with applicable rules and regulations.

12. Consider in advance whether or not to approve any audit and non-audit services to be performed by the independent accounting firm required to be approved by the Committee pursuant to the rules and regulations of any applicable Regulatory Body and adopt and implement policies for such pre-approval.

13. The Committee shall have the authority to oversee and determine the compensation of any independent accounting firm engaged by the Corporation and shall notify the Corporation of anticipated funding needs of the Committee.

**Internal Audit Function**

14. Review the responsibilities, budget and staffing of any internal auditors.

15. Review the significant reports to management prepared by any internal auditors and management's responses.

**Financial Reporting Processes**

16. In consultation with the independent accounting firm and management, review annually the adequacy of the Corporation's internal control over financial reporting.

17. Review disclosures made to the Committee by the Corporation's chief executive officer and chief financial officer in connection with their certifications of the Corporation's Annual Reports on Form 10-K and Quarterly Reports on Form 10-Q, including disclosures concerning (a) evaluations of the design and operation of the Corporation's internal control over financial reporting, (b) significant deficiencies and material weaknesses in the design and operation of the Corporation's internal control over financial reporting which are reasonably likely to adversely affect the Corporation's ability to record, process, summarize, and report financial information, and (c) any fraud, whether or not material, that involves management or other employees who have a significant role in the Corporation's internal controls. The Committee shall direct the actions to be taken and/or make recommendations to the Board of Directors of actions to be taken to the extent such disclosures indicate the finding of any significant deficiencies in internal controls or fraud.

18. Regularly review the Company's critical accounting policies and accounting estimates resulting from the application of these policies and inquire at least annually of both the Corporation's internal auditors, if any, and the independent accounting firm as to whether either has any concerns relative to the quality or aggressiveness of management's accounting policies.

19. Request and review periodic reports from management of the Corporation as to the Corporation's processes for reporting on internal controls of the Corporation as required by Section 404 of the Sarbanes-Oxley Act of 2002.

**Compliance**

20. To the extent deemed necessary by the Committee to carry out its duties, it shall have the authority to engage outside counsel, independent accounting consultants and/or other experts at the Corporation's expense.

21. Determine the funding necessary for (i) compensation of any independent accounting firm engaged for the purpose of preparing or issuing an audit report or performing other audit, review or attest services for the Corporation, (ii) ordinary administrative expenses of the Committee that are necessary or appropriate in carrying out the Committee's duties, and (iii) compensation of any outside advisors to be engaged by the Committee and notify the Corporation of anticipated funding needs of the Committee.

22. Establish written procedures for (a) the receipt, retention, and treatment of complaints received by the Corporation regarding accounting, internal accounting controls, or auditing matters; and (b) the confidential, anonymous submission by employees of the Corporation of concerns regarding questionable accounting or auditing matters.

23. Investigate any allegations that any officer or director of the Corporation, or any other person acting under the direction of any such person, took any action to fraudulently influence, coerce, manipulate, or mislead any independent public or certified accountant engaged in the performance of an audit of the financial statements of the Corporation for the purpose of rendering such financial statements materially misleading and, if such allegations prove to be correct, take or recommend to the Board of Directors appropriate disciplinary action.

**Reporting**

24. Prepare, in accordance with the rules of the SEC, as modified or supplemented from time to time, a written report of the Committee to be included in the Corporation's annual proxy statement for each annual meeting of stockholders.

25. To the extent required by any Regulatory Body, instruct the Corporation's management to disclose in its annual proxy statement for each annual meeting of stockholders, Annual Report on Form 10-K and Quarterly Report on Form 10-Q, the approval by the Committee of any non-audit services performed by the independent accounting firm, and review the substance of any such disclosure and the considerations relating to the compatibility of such services with maintaining the independence of the accounting firm.

While the Audit Committee has the responsibilities and powers set forth in this Charter, it is not the duty of the Audit Committee to plan or conduct audits or to determine that the Corporation's financial statements are complete and accurate and are in accordance with generally accepted accounting principles.

## ALLEGATIONS OF FALSE STATEMENTS

*Longwei Massively Overstates its Business Operations*

41.     The Relevant Period begins on May 17, 2010. When Longwei issued a press release announcing its financial results for the third quarter of 2010. For the quarter, the Company reported revenues of $96.9 million and a GAAP income of $12.1 million or $0.14 per share and highlighted the following summary financial data:

**Third Quarter Highlights**

- Revenues for the fiscal year 2010 third quarter totaled $96.9 million, up from $49.7 million achieved in the third quarter of 2009, representing an increase of $47.2 million, or 94.9%
- Adjusted Net Income for the third quarter increased 99.7% to $13.3 million with Adjusted EPS of $0.15 above and beyond the Adjusted Net Income of $6.7 million and Adjusted EPS of $0.09 achieved in the same period a year ago
- Revenues generated at the Gujiao facility totaled $29.3 million for the third quarter -- Revenues generated at the Taiyuan facility totaled $67.6 million for the third quarter, an increase of 36.0%.
- The company reaffirms its previously stated guidance for the fiscal year 2010 financial results projecting Revenue for the fiscal year ending June 30, 2010 of $310.8 million with Adjusted Net Income of $40.3 million and GAAP Net Income of $20.3 million. The projection for Adjusted EPS is $0.45 and GAAP EPS is $0.13, respectively-- The company reaffirms its previously stated guidance for the fiscal year 2011 financial results projecting Revenue for the fiscal year ending June 30, 2011 of $494.7 million with Adjusted Net Income of $73.0 million and GAAP Net Income of $57.3 million. The projection for Adjusted EPS is $0.71 and GAAP EPS is $0.56, respectively

42.     Under "Financial Outlook," the May 17, 2010 press release provided:

The company reaffirms its previously stated guidance for the fiscal year 2010 financial results projecting revenue for the fiscal year ending June 30, 2010 of $310.8 million with adjusted net income of $40.3 million and GAAP net income of $20.3 million. The projection for adjusted EPS is $0.45 and GAAP EPS is $0.13, respectively.

The company reaffirms its previously stated guidance for the fiscal year 2011 financial results projecting Revenue for the fiscal year ending June 30, 2011 of $494.7 million with Adjusted Net Income of $73.0 million and GAAP Net Income of $57.3 million. The projection for Adjusted EPS is $0.71 and GAAP EPS is $0.56, respectively.

43.     In the May 17, 2010 press release, Defendant Cai was quoted as saying:

Through March 31, 2010 we have generated substantial sales at the Gujiao facility, totaling $37.8 million. Our Gujiao deliveries continue to increase and I am most pleased with the 19% gross margin, an increase of 3% over the prior reporting quarter, generated at the Gujiao facility during this last quarter. We generated our first agency fee revenues at Gujiao during the recent quarter and also benefited from some timely purchases of additional inventory. Additionally, we purchased a significant amount of inventory leading up to the recent price increase announced by the PRC government on April 14, 2010 and should see the full benefit of the price increase during the fourth quarter.

44.     In the May 17, 2010 press release, Defendant Crane was quoted as saying:

We have exceeded our internal forecasts for the quarterly reporting period ended March 31, 2010. Revenue growth during the third quarter was significant at Gujiao, which generated 41.1% of the revenues generated at Taiyuan in the prior reporting period ending December 31, 2009. Gujiao's success thus far is compelling but growth of 36.0% at Taiyuan is also quite impressive. We are pleased to report solid revenue and earnings growth at both of our facilities.

45.     That same day, the Company filed its Form 10-Q with the SEC for the quarter ended March 31, 2010 (the 3Q 2010 10-Q), emphasizing the earnings from the press release. The Form 10-Q was signed by Defendant Cai and Crane. Accompanying the 3Q 2010 10-Q were separately executed Sarbanes-Oxley Act of 2002 ("SOX") certifications of Defendant Cai and Crane falsely attesting to the accuracy of the 10-Q.

46.     On June 23, 2010, Longwei disclosed that Defendant Crane abruptly resigned as the CFO of the Company on June 16, 2010 and appointed Defendant Toups to replace him.

47.     On September 7, 2010, the Longwei issued a press release announcing its interim operating highlights and provided:

During the month of June, Longwei generated roughly $39 million in revenues, an increase of 130% from $17.0 million in June 2009. Gross profit

in June of this year reached $8.1 million, up 138% from $3.4 million in the same period last year.

Total revenues for the fiscal year ended June 30, 2010 were $339.4 million, a 72% increase from fiscal 2009 revenues of $196.8 million. Sales figures for the fiscal year ended June 30, 2010 surpassed management's previously stated fiscal 2010 guidance of $310.8 million by 9.2%. Gross profit for the twelve-month period ended June 30, 2010 was $68.5 million, up 119% from fiscal 2009 gross profit of $31.3 million.

48.     In the September 7, 2010 press release, Defendant Cai was quoted as saying:

We are very pleased with our financial performance in June and over the last few months, thanks in large part to the quick ramp-up of business at our new Gujiao storage facility…Building on our strong growth this past year, we expect sales in fiscal 2011 to exceed $500 million. The outlook for our industry and economic environment is promising, as China's rapid economic growth recently propelled it past Japan as the world's second largest economy in terms of GDP. Coupled with China's growing dominance in the automobile market and strong industrial growth in our operating region, Longwei is in an ideal position to capitalize on the boom in oil demand.

49.     In the September 7, 2010 press release, Defendant Toups was quoted as saying:

As one of the largest oil and gas distributors in China, Longwei is a direct beneficiary of the long-term upward trend in oil consumption and vehicle use in China. Last year China became the largest new automobile market in the world, and a recent International Energy Agency report suggests that China may now also be the top global energy consumer as well. These immense outside developments, taken in conjunction with our strong internal growth, continue to substantiate our business model and underscore the attractiveness of our industry. We look forward to another record year for Longwei in 2011.

50.     On September 28, 2010, the Company filed its Form 10-K with the SEC for the fiscal year ended June 30, 2010 (the "2010 10-K"), stating the earnings that were emphasized in the next day's press release. The 2010 10-K was signed by Defendants Cai, Toups. Y. Xue, DeCiccio, and Cole. Accompanying the 2010 10-K were separately executed Sarbanes-Oxley Act of 2002 ("SOX") certifications of Defendant Cai and Toups falsely attesting to the accuracy of the 2010 10-K.

51.     The 2010 10-K included Defendant CVWB's materially false and misleading

unqualified audit opinion dated September 28, 2010, which stated in relevant parts:

REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM

To The Board of Directors
Longwei Petroleum Investment Holding Limited
No.30 Guanghua Street, Xiaojingyu Xiang, Wanbailin District
Taiyuan City, Shanxi Province, China P.C. 030024

We have audited the accompanying consolidated balance sheets of Longwei Petroleum Investment Holding Limited and Subsidiaries (the Company) as of June 30, 2010 and 2009, and the related consolidated statements of operations and other comprehensive income, changes in stockholders' equity and cash flows for the years then ended. These consolidated financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these consolidated financial statements based on our audits.

We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States of America). Those standards require that we plan and perform the audits to obtain reasonable assurance about whether the financial statements are free of material misstatement. The Company is not required to have, nor were we engaged to perform, an audit of its internal control over financial reporting. Our audits included consideration of internal control over financial reporting, as a basis for designing audit procedures that are appropriate in the circumstances but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial reporting. Accordingly, we express no such opinion. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the consolidated financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall consolidated financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the consolidated financial position of Longwei Petroleum Investment Holding Limited and Subsidiaries as of June 30, 2010 and 2009, and the consolidated results of its operations and its cash flows for the years then ended, in conformity with accounting principles generally accepted in the United States of America.

/s/ Child, Van Wagoner & Bradshaw, PLLC

Child, Van Wagoner & Bradshaw, PLLC
Salt Lake City, Utah
September 28, 2010

52.    Defendant CVWB's September 28, 2010 unqualified audit opinion was materially false and misleading because Longwei's financial statements did not present fairly, in all material respects, its consolidated financial position.

53.    On September 29, 2010, Longwei issued a press release announcing its financial results for the fiscal year ended June 30, 2010. For the 2010 fiscal year, the Company reported revenues of $34.3.2 million and a net income of $50.2 million and highlighted the following summary financial data:

**Fiscal Year 2010 Financial Highlights: (Year-over-Year Results)**

- Revenues increased 74% to $343.2 million
- Net Income increased 131% to $50.2 million
- EPS increased 39% to $0.39 per Fully Diluted Share
- Adjust EPS increased 61% to $0.45 per Fully Diluted Share (Adjusted net of derivative and financing expenses)
- Working Capital increased $56.0 Million or 72% to $134.2 Million

54.    In the September 29, 2010 press release, Defendant Cai was quoted as saying:

I am very pleased with our results for the 2010 fiscal year, especially the quick ramp-up of sales at our Gujiao facility in its first six months of operations… We exceeded our overall revenue guidance of $310.8 million by over 10%, and we generated $50.2 million in net income. We look forward to continued strong demand from both the industrial sector in our region, as well as strong consumer demand from the rapid rise in private automobile usage in China as a whole. We expect fiscal 2011 to be another record year as we continue to penetrate the market for our products and experience the benefits of a full year of revenue generation from the Gujiao facility.

55.    On November 15, 2010, the Company filed its Form 10-Q with the SEC for the quarter ended September 30, 2010, stating the earnings that were emphasized in the next day's press release. The Form 10-Q was signed by Defendant Cai and Toups.

Accompanying the 10-Q were separately executed SOX certifications of Defendant Cai and Toups falsely attesting to the accuracy of the 10-Q.

56.     On November 16, 2010, Longwei issued a press release announcing its financial results for the first quarter 2011. For the quarter, the Company reported revenues of $113.3 million and a GAAP income of $4.8 million or $0.05 per share and highlighted the following summary financial data:

**First Quarter Fiscal Year 2011 Financial Highlights: (Year-over-Year, 3-Month Results)**

- Revenues increased 91% to $113.3 million, compared with $59.4 million
- Operating Income increased 86% to $20.5 million, compared with $11.1 million
- Adjusted* Net Income increased 84% to $15.2 million, compared to $8.3 million
- Adjusted* Basic EPS increased to $0.16 per share and Diluted EPS to $0.13 per share, compared to $0.10 per share (Basic and Diluted EPS) for the three months ended September 30 2010
- Net Income after $10.4 million non-cash charge for the change in the warrant derivative liability associated with the October 2009 financing decreased 32% to $4.8 million, compared to $8.3 million
- Basic GAAP EPS decreased to $0.05 per share and Diluted GAAP EPS to $0.04 per share, compared to Basic GAAP EPS of $0.09 and Diluted GAAP EPS $0.08 for the three months ended September 30, 2009
- Current assets increased 11%, or $15.3 million, to $159.3 million; no long-term debt
- Tangible book value was $186.3 million, or $1.63 per diluted share, as of September 30, 2010
- The new Gujiao fuel storage depot contributed $41.5 million in revenues for the first quarter(*Pro forma non-GAAP adjustment net of non-cash derivative charge)

57.     In the November 16, 2010 press release, Defendant Toups was quoted as saying:

We experienced another record quarter of revenue growth and operating profits. The non-cash charge for the change in the warrant derivative liability related to our October 2009 financing and has no impact on our

operations…We have continued to improve our working capital management to enhance our inventory level flexibility and purchasing capability to react to changes in market prices. We are experiencing strong demand from our growing customer base.

58.     In the November 16, 2010 press release, Defendant Cai was quoted as saying:

> We continue to post very strong operating results…Our performance remains on-track as we continue to add new customers, as well as the organic growth of our existing customer base due to the strong domestic petroleum demand from both industrial and consumer customers. We expect fiscal 2011 to be another record year as we continue to penetrate the market for our products and experience the benefits of a full year of revenue generation from our new Gujiao facility.

59.     On February 14, 2011, the Company filed its Form 10-Q with the SEC for the quarter ended December 31, 2010, stating the earnings that were emphasized in the next day's press release. The Form 10-Q was signed by Defendant Cai and Toups. Accompanying the 10-Q were separately executed SOX certifications of Defendant Cai and Toups falsely attesting to the accuracy of the 10-Q.

60.     On February 15, 2011, Longwei issued a press release announcing its financial results for the second quarter of 2011. For the quarter, the Company reported revenues of $120.2 million and a GAAP income of $14.1 million or $0.15 per share and highlighted the following summary financial data:

**Second Quarter Fiscal Year 2011 Financial Highlights: (Year-over-Year, 3-Month Results)**

- Revenues increased 69% to $120.2 million, compared with $71.2 million.
- Operating Income increased 69% to $22.1 million, compared with $13.1 million.
- GAAP Net Income Attributable to Common Shareholders increased to $14.1 million, compared to a net loss of $12.4 million.

- Basic EPS increased to $0.15 per share and diluted EPS to $0.12 per share, compared to a loss of $0.15 per share (basic and diluted EPS) for the three months ended December 31, 2009.
- Non-GAAP* Net Income Attributable to Common Shareholders increased to $16.3 million, compared to $0.85 million.
- Current Assets, net of the non-cash warrant derivative liability, increased 29%, or $39.0 million, to $175.3 million. The Company has no long-term debt.
- Tangible book value was $206.5 million, or $1.81 per diluted share, as of December 31, 2010.
- The Company's Taiyuan and Gujiao fuel storage facilities contributed revenues of $69.1 million and $45.4 million, respectively. Agency fees contributed $5.6 million to revenues.

61.    In the February 15, 2011 press release, Defendant Cai was quoted as saying:

Our business has never been stronger, as demonstrated by our record revenue and earnings results …. Revenues for the quarter were at an all-time high, and both our top and bottom lines showed very strong growth year-over-year. We recently renewed our supply contracts with fifteen major customers, and we plan to increase our storage capacity in the current calendar year to meet the constant growth in demand for fuel in China. We are very excited about the growth prospects in our regional market and fully expect to meet our previous guidance of at least $500 million in revenues and $70 million in net income (adjusted for non-cash warrant derivative liability charges) for the 2011 fiscal year.

62.    In the February 15, 2011 press release, Defendant Toups was quoted as saying:

The demand for petroleum products continues to grow…We want to be well-positioned to take advantage of opportunities in our region to expand our capacity and reach. Our last acquisition in Gujiao has proven to be very successful, and we want to expand our distribution base to support this growing demand.

63.    On May 16, 2011, the Company filed its Form 10-Q with the SEC for the quarter ended March 31, 2011, stating the earnings that were emphasized in the next day's press release. The Form 10-Q was signed by Defendant Cai and Toups. Accompanying the 10-Q were separately executed SOX certifications of Defendants Cai and Toups falsely attesting to the accuracy of the 10-Q.

64.     On May 17, 2011, Longwei issued a press release announcing its financial results for the third quarter of 2011. For the quarter, the Company reported revenues of $119.6 million and a GAAP income of $26.4 million or $0.26 per share and highlighted the following summary financial data:

**Third Quarter Fiscal Year 2011 Financial Highlights: (Year-over-Year, 3-Month Results)**

- Revenues increased 23.4% to $119.6 million, compared with $96.9 million.
- Operating Income increased 27.1% to $23.0 million, compared with $18.1 million.
- GAAP Net Income Attributable to Common Shareholders increased 122.0% to $26.4 million, compared to $11.9 million.
- Basic EPS increased to $0.26 per share and diluted EPS to $0.26 per share, compared to $0.14 per share basic and $0.12 diluted EPS for the three months ended March 31, 2010.
- Non-GAAP* Net Income Attributable to Common Shareholders increased to $17.2 million, compared to $7.9 million.
- Working capital, net of the non-cash warrant derivative liability, increased 39.6%, or $46.2 million, to $163.0 million. The Company has no long-term debt.
- Tangible book value was $235.8 million, or $2.35 per share, as of March 31, 2011.
- The Company's Taiyuan and Gujiao fuel storage facilities contributed revenues of $63.1 million and $51.3 million, respectively. Agency fees contributed $5.2 million to revenues.

65.     In the May 17, 2011 press release, Defendant Cai was quoted as saying:

Our business continues to produce strong year-over-year top and bottom line growth…To meet the constant growth in demand for fuel in China, we are in the process of nearly doubling our capacity through the acquisition of the assets of Haujie Petroleum. As of the end of the third quarter our deposit paid has reached $32.8 million, and as previously disclosed, we intend to pay the remaining balance of the purchase price using a combination of cash on hand, bank and other financing, and working capital. If we are unable to secure favorable terms for debt or equity financing, we will complete the purchase using cash on hand. We are very excited about the growth prospects moving forward and fully expect to meet our previous guidance of at least $500 million in revenues and $70 million in net income (adjusted for non-cash warrant derivative liability charges) for the 2011 fiscal year.

66.     In the May 17, 2011 press release, Defendant Toups was quoted as saying:

The demand for petroleum products continues to grow…We look forward to duplicating the success we've seen from the acquisition of the Gujiao facility with our newest acquisition target. The expanded capacity these assets provide will position us well to serve the growing demand in the region.

67.     On August 24, 2011, Longwei issued a press release announcing the updating of its guidance for the fiscal years ended June 30, 2011 and 2012.

68.     In the August 24, 2011 press release, Defendant Cai was quoted as saying:

We have currently paid a deposit of RMB 550 million (approximately $85.1 million USD) through cash on hand for the purchase of the assets of Huajie Petroleum Co., Ltd. ("Huajie Petroleum" or the "Seller"), a fuel storage depot in northern Shanxi Province with a 100,000-metric-ton storage capacity. We remain committed to not diluting our shareholders at the current share price level, so the Company has arrangements to pay the balance of the total purchase price of RMB 700 million (approximately $108.3 million USD) using cash on hand. We have already paid approximately 81% of the purchase price and intend to close as soon as possible during our second fiscal quarter.

*****

This acquisition will nearly double our total storage capacity to 220,000 metric tons and extend our reach into the fast-growing industrial area of northern Shanxi Province. With the addition of the Huajie facility, we will strengthen our lead as the largest private fuel storage and distribution business in the province and will be better positioned to capitalize on the rising demand for petroleum products in our regional market. We will continue to seek accretive acquisitions with the potential to enhance our regional presence and attract new customers. As we build upon the strong foundation we have established, we remain committed to increasing value for our shareholders.

69.     In the August 24, 2011 press release, Defendant Toups was quoted as saying:

We have recently completed our audit field work and plan to release our year-end financial statements on Form 10-K during mid-September. For the fiscal year ended June 30, 2011, the Company's revenues are currently expected to be approximately $480 million and net income is expected to be approximately $65 million, adjusted for the warrant derivative liability expense. We have revised our fiscal 2011 revenue guidance downward by

4% as we have tried to maintain margin integrity during a period of volatile price fluctuations.

*****

We anticipate our two current facilities will grow in volume at least 20% during fiscal 2012," stated Mr. Toups. "We are adjusting our organic revenue growth guidance for these two facilities to approximately $576 million with net income of approximately $78 million for our current fiscal year ending June 30, 2012. We will update our fiscal 2012 guidance to reflect the new asset purchase once the facility is closed and online, which we anticipate during our second fiscal quarter.

70.    On September 13, 2011, Longwei issued a press release announcing its financial results for the fiscal year ended June 30, 2011. For the 2011 fiscal year, the Company reported revenues of $481.6 million and a GAAP income of $62.5 million or $0.64 per share and highlighted the following summary financial data:

**Fiscal Year 2011 Financial Highlights: (Year-over-Year Results)**

- Revenues increased 40% to $481.6 million, compared with $343.2 million.
- Operating Income increased 42% to $91.7 million, compared with $64.4 million.
- Non-GAAP* Net Income Attributable to Common Shareholders increased 44% to $68.0 million, compared to $47.2 million.
- Non-GAAP* Basic Earnings per Share ("EPS") increased to $0.69 per share and Diluted EPS to $0.67 per share, compared to $0.55 per share basic and $0.50 diluted EPS for the fiscal year ended June 30, 2010.
- GAAP Net Income Attributable to Common Shareholders increased 52% to $62.5 million, compared with $41.1 million.
- Basic Earnings per Share ("EPS") increased to $0.64 per share and Diluted EPS to $0.61 per share, compared to $0.48 per share basic and $0.43 diluted EPS for the fiscal year ended June 30, 2010.
- The Company's Taiyuan and Gujiao fuel storage facilities contributed revenues of $269.7 million and $188.3 million, respectively. Agency fees contributed $23.5 million to revenues.
- Stockholders' Equity increased $83.9 million to $261.7 million, compared with $177.8 million

(*Non-GAAP adjustment net of non-cash derivative charge)

71. Under "Financial Outlook," the September 13, 2011 press release provided:

The Company maintains its current guidance for fiscal 2012. The Company anticipates revenues of approximately $576 million with net income of approximately $78 million (adjusted net of non-cash warrant derivative liability expense) for the fiscal year ending June 30, 2012. The Company will update its fiscal 2012 guidance to reflect its purchase of the assets of Huajie Petroleum Co., Ltd. once the asset purchase is closed and online, which the Company anticipates during the second fiscal quarter. Longwei expects the facility to contribute approximately $300 million to revenues and $40 million to net income during the first 12 months of operations.

According to a November 2010 report by the U.S. Energy Information Administration, China's oil consumption will continue to rise in 2011 and 2012, with oil demand expected to reach 9.6 million barrels per day in 2011 and almost double to 17 million barrels per day by 2035. The PRC was also named the top global energy consumer in a recent report from the International Energy Agency.

72. In the September 13, 2011 press release, Defendant Cai was quoted as saying:

We are pleased to report another year of record financial performance…Our operations remain strong, and we once again achieved robust year-over-year top and bottom line growth. Our Gujiao facility contributed nearly 40% of total revenues during fiscal 2011, its first full year of operations. We hope to replicate the success of the Gujiao acquisition with our upcoming Huajie Petroleum asset purchase, which will nearly double our storage capacity upon its completion. We have paid 81% of the total RMB 700 million (approximately $108.3 million USD) purchase price to date and expect to close the transaction during our second fiscal quarter. We firmly believe the Company is well positioned to capitalize on the continued rising demand for oil in China, and the addition of the new facility assets will further accelerate our revenue and earnings growth in fiscal 2012.

73. In the September 13, 2011 press release, Defendant Toups was quoted as saying:

Oil consumption in China is continuing to grow, and the rapid urbanization and burgeoning automobile market remain major growth drivers for our business. In the year ahead, we will continue to focus on expanding our customer base and improving inventory management. We expect both of our existing facilities to continue generating strong revenues, and we are

confident in our ability to complete and quickly integrate the Huajie Petroleum acquisition.

74.    That same day, the Company filed its Form 10-K with the SEC for the fiscal year ended June 30, 2011 (the "2011 10-K"), emphasizing the earnings from the press release.  The 201110-K was signed by Defendants Cai, Toups, Y. Xue, DeCiccio, and Cole. Accompanying the 2011 10-K were separately executed SOX certifications of Defendant Cai and Toups falsely attesting to the accuracy of the 2011 10-K.

75.    The 2011 10-K included Defendant CVWB's materially false and misleading unqualified audit opinion dated September 12, 2011, which stated in relevant parts:

REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM

To The Board of Directors
Longwei Petroleum Investment Holding Limited
No.30 Guanghua Street, Xiaojingyu Xiang, Wanbailin District
Taiyuan City, Shanxi Province, China P.C. 030024

We have audited the accompanying consolidated balance sheets of Longwei Petroleum Investment Holding Limited and Subsidiaries (the Company) as of June 30, 2010 and 2009, and the related consolidated statements of operations and other comprehensive income, changes in stockholders' equity and cash flows for the years then ended. These consolidated financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these consolidated financial statements based on our audits.

We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States of America). An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the consolidated financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall consolidated financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the consolidated financial position of Longwei Petroleum Investment Holding Limited and Subsidiaries as of June 30, 2011 and 2010, and the consolidated results of its operations and its cash flows for the three-years then ended, in conformity with accounting principles generally accepted in the United States of America.

We also have audited, in accordance with the standards of the Public Company Accounting Oversight Board (United States), Longwei Petroleum Investment Holding Limited and subsidiaries' internal control over financial reporting as of June 30, 2011, based on criteria established in Internal Control—Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO), and our report dated September 11, 2011, expressed an adverse opinion on the effectiveness of internal control over financial reporting.

 /s/ Child, Van Wagoner & Bradshaw, PLLC
Child, Van Wagoner & Bradshaw, PLLC
Salt Lake City, Utah
September 12, 2011

76.     Defendant CVWB's September 12, 2011 unqualified audit opinion was materially false and misleading because Longwei's financial statements did not present fairly, in all material respects, its consolidated financial position.

77.     On September 30, 2011, Longwei issued a press release announcing a corporate update.

78.     Under "Financial Outlook," the September 30, 2011 press release provided:

The Company maintains its current guidance for fiscal 2012. The Company projects revenues of approximately $576 million with net income of approximately $78 million (adjusted net of non-cash warrant derivative liability expense) for the fiscal year ending June 30, 2012. The Company will update its fiscal 2012 guidance to reflect its purchase of the assets of Huajie Petroleum Co., Ltd. once the asset purchase is closed and online, which the Company anticipates during the second fiscal quarter. Longwei expects the facility to contribute approximately $300 million to revenues and $40 million to net income during the first 12 months of operations.

79.     In the September 30, 2011 press release, Defendant Cai was quoted as saying:

The Company's operations continue to perform well, and we have had solid first fiscal quarter 2012 results…This follows our strong fiscal year 2011 performance, which produced record revenues and earnings. Our revenues increased 40% to $482 million in fiscal 2011, and adjusted net income increased 44% to $68 million or $0.67 earnings per share (adjusted net of non-cash warrant derivative liability expense).

We are disappointed with the drop in our share price, which we believe does not correlate to our successful operating results…We continue to move our operations forward and plan to complete the acquisition of the Huajie Petroleum assets during this next quarter using Company cash generated through operations.

\*\*\*\*\*

We want to assure our shareholders that there are no outstanding issues regarding the Company that have not been fully disclosed in our recently filed Annual Report on Form 10-K…Our operations remain strong, and we once again achieved robust year-over-year top and bottom line growth. We firmly believe the Company is well positioned to capitalize on the continued rising demand for oil in China, and we believe the addition of the new facility assets will further accelerate our revenue and earnings growth in fiscal 2012.

80.     In the September 30, 2011 press release, Defendant Toups was quoted as saying:

Certain U.S.-listed Chinese stocks have been much maligned in the marketplace over accounting and corporate governance issues, which we are not involved in. We have a clean financial audit opinion as of June 30, 2011. Unfortunately, the ongoing volatility in the capital markets and the turmoil in the Chinese small-cap sector have pulled stocks in our sector down considerably.

\*\*\*\*\*

Oil consumption in China is continuing to grow, and the rapid urbanization and burgeoning automobile market remain major growth drivers for our business. In the year ahead, we will continue to focus on expanding our customer base and improving inventory management. We expect both of our existing facilities to continue generating strong revenues, and we are confident in our ability to complete and quickly integrate the Huajie Petroleum acquisition.

81.     On November 9, 2011, Longwei issued a press release announcing its financial results for the first quarter of 2012.   For the quarter, the Company reported revenues of $118.6 million and a GAAP income of $17.8 million or $0.18 per share and highlighted the following summary financial data:

**First Quarter Fiscal Year 2012 Financial Highlights: (Year-over-Year, 3-Month Results)**

- Revenues increased 4.7% to $118.6 million, compared with $113.3 million.
- Income Before Taxes increased 128.6% to $23.2 million, compared with $10.1 million.
- GAAP Net Income Attributable to Common Shareholders increased 272.6% to $17.8 million, compared with $4.9 million.
- Basic and Diluted Earnings per Share ("EPS") increased to $0.18 per share for the three months ended September 30, 2011, compared to $0.05 per Basic and Diluted Share for the three months ended September 30, 2010.
- The Company's Taiyuan and Gujiao fuel storage facilities contributed revenues of $58.2 million and $54.8 million, respectively. Agency fees contributed $5.5 million to revenues.
- Stockholders' Equity increased $20.7 million to $282.4 million, compared with $261.7 million.

82.     Under "Financial Outlook," the November 9, 2011 press release provided:

The Company maintains its current guidance for fiscal 2012. The Company anticipates revenues of approximately $576 million with net income of approximately $78 million (adjusted net of non-cash warrant derivative liability expense) for the fiscal year ending June 30, 2012. The Company will update its fiscal 2012 guidance to reflect its purchase of the assets of Huajie Petroleum Co., Ltd. once the asset purchase is closed and online, which the Company anticipates to occur during the current fiscal quarter. Longwei expects the facility to contribute approximately $300 million to revenues and $40 million to net income during the first 12 months of operations.

According to a November 2010 report by the U.S. Energy Information Administration, China's oil consumption will continue to rise in 2011 and 2012, with oil demand expected to reach 9.6 million barrels per day in 2011 and nearly double to 17 million barrels per day by 2035. The PRC was also named the top global energy consumer in a recent report from the International Energy Agency.

83.    In the November 9, 2011 press release, Defendant Cai was quoted as saying:

We are pleased to report another quarter of strong profitability…We carefully managed our cash flow to take advantage of declining international oil prices during the quarter by building our inventory position, while balancing the funding required to complete our purchase of the Huajie Petroleum assets. The Huajie Petroleum assets will add another 100,000 metric tons to our storage capacity and we believe will better position us to serve China's rising demand for petroleum products. By remaining focused on executing our growth strategy, we expect to deliver continued shareholder value improvement in fiscal 2012.

84.    In the November 9, 2011 press release, Defendant Toups was quoted as saying:

The Energy Information Administration forecasts that China will account for 40% of the world's oil demand growth in 2012…As the leading private petroleum supplier in Shanxi Province, we are capitalizing on a tremendous market opportunity. Our customer base continues to grow, and we are set to repeat the success of our Gujiao acquisition with the near-term closing of the assets of the Huajie facility, which will nearly double our overall capacity and provide us with access to the growing northern industrial region of the province. Once Huajie comes online we believe we will be able to increase our sales, positioning us for another year of strong revenue and earnings growth.

85.    That same day, the Company filed its Form 10-Q with the SEC for the quarter ended September 30, 2011, emphasizing the earnings from the press release.  The Form 10-Q was signed by Defendants Cai and Toups.  Accompanying the 10-Q were separately executed SOX certifications of Defendant Cai and Toups falsely attesting to the accuracy of the 10-Q.

86.    On January 4, 2012, Longwei issued a press release announcing a a year-end 2011 corporate update.

87.    In the January 4, 2012 press release, Defendant Cai was quoted as saying:

We are pleased with our strong operating results year-to-date…Our revenues for the first five months of our fiscal year ending June 30, 2012 are up 6.1% year-over-year to $204.8 million. We are also on track to close on our third

facility as soon as possible. We are working with the seller and local officials to finalize the asset transfer.

*****

With the closing of our third facility, Longwei becomes the dominant private storage facility operator in the central region of the PRC…We expect continued strong demand and have become more selective in our customer base to maintain our profit margins.

88.    In the January 4, 2012 press release, Defendant Toups was quoted as saying:

We believe the Company is well positioned to capitalize on the continued rising demand for petroleum products in the PRC, and we believe the addition of the new facility assets will further accelerate our revenue and earnings growth in fiscal 2012…We are also working to improve our level of transparency with our shareholders to keep them informed on our corporate developments during the year.

89.    On February 9, 2012, Longwei issued a press release announcing its financial results for the second quarter of 2012. For the quarter, the Company reported revenues of $126.4 million and a GAAP income of $15.2 million and highlighted the following summary financial data:

**Second Quarter Fiscal Year 2012 Financial Highlights: (Year-over-Year, 3-Month Results)**

- Revenues increased 5.2% to $126.4 million, compared with $120.2 million.
- Income Before Taxes increased 34.5% to $20.6 million, compared with $15.3 million.
- GAAP Net Income Attributable to Common Shareholders increased 58.7% to $15.2 million, compared with $9.5 million.
- Basic and Diluted Earnings per Share ("EPS") increased to $0.15 per share for the three months ended December 31, 2011, compared to $0.10 per Basic EPS and $0.09 per Diluted EPS for the three months ended December 31, 2010.
- The Company's Taiyuan and Gujiao fuel storage facilities contributed revenues of $64.8 million and $56.3 million, respectively. Agency fees contributed $5.3 million to revenues.
- Stockholders' Equity increased $37.5 million to $299.2 million, compared with $261.7 million.

90.     Under "Financial Outlook," the February 9, 2012 press release provided:

Based on forecasted volume improvement and expected price increases, the Company maintains its current guidance for fiscal 2012. The Company anticipates revenues of approximately $576 million with net income of approximately $78 million (adjusted net of non-cash warrant derivative liability expense) for the fiscal year ending June 30, 2012. The Company will update its fiscal 2012 guidance to reflect its purchase of the assets of Huajie Petroleum Co., Ltd. once the asset purchase is closed and online.

The assets of Huajie Petroleum Co., Ltd. include commercial licenses, land use rights for 98 acres of land, 100,000-tonnage fuel tanks with accessory facilities and equipment, a special transportation railway line, and a 3,000-square-meter office building. To date Longwei has paid a RMB 550 million (approximately $86.5 million USD) deposit toward the total purchase price of RMB 700 million (approximately $110.1 million USD).

91.     In the February 9, 2012 press release, Defendant Cai was quoted as saying:

We delivered another quarter of solid operating results, highlighted by a 130% increase in net income year-over-year for the six months ended December 31, 2011…Given the demand for petroleum products in China, we expect revenue and earnings growth to increase as we enter the second half of our fiscal year. The Huajie Petroleum asset purchase, once completed, will provide an additional catalyst for potential growth by nearly doubling our storage capacity and expanding our footprint in central China. We believe our strong market position and proven business model will result in long-term sales and earnings growth.

92.     In the February 9, 2012 press release, Defendant Toups was quoted as saying:

Our sales increased by $7.8 million or 6.5% between the first and second quarters of 2012, while our sales volume increased 9.7% during this period. During this timeframe we experienced some pressure on our margins from the impact of the increasing international price of crude oil and the retail price decrease implemented by the PRC in October 2011…We pay market prices to our refinery suppliers and carefully manage our inventory levels to adjust to pricing fluctuations. During this timeframe we had volatility in both sales price and costs as the PRC tried to control the retail price of petroleum to cool inflation.

*****

The Energy Information Administration projects that China's oil-product demand will grow 4.3% this year to reach 9.9 million barrels per day…Rising car ownership and industrialization in the PRC continue to drive energy demand growth, creating an ideal climate for us to acquire new customers. The Huajie Petroleum asset purchase remains an important element in our expansion plans, and we are working to finalize the transaction as soon as possible.

93.     That same day, the Company filed its Form 10-Q with the SEC for the quarter ended December 31, 2011, emphasizing the earnings from the press release. The Form 10-Q was signed by Defendants Cai and Toups.  Accompanying the 10-Q were separately executed SOX certifications of Defendant Cai and Toups falsely attesting to the accuracy of the 10-Q.

94.     On May 10, 2012, Longwei issued a press release announcing its financial results for the third quarter of 2012. For quarter, the Company reported revenues of $129.2 million and a GAAP income of $14.9 million or $0.15 per share and highlighted the following summary financial data:

**Third Quarter Fiscal Year 2012 Financial Highlights: (Year-over-Year, 3-Month Results)**

- Revenues increased 8.1% to $129.2 million, compared with $119.6 million.
- The Company's Taiyuan and Gujiao fuel storage facilities contributed revenues of $60.6 million and $64.3 million, respectively. Agency fees contributed $4.4 million to revenues.
- Current Assets increased $48.2 million or 33.8% to $190.8 million at March 31, 2012, compared with $142.6 million at June 30, 2011. The Company also maintained a deposit of $87.0 million paid in cash generated through operations toward the purchase price of $110.1 million for the assets of Huajie Petroleum.
- Stockholders' Equity increased $54.3 million or 20.1% to $316.0 million at March 31, 2012, compared with $261.7 million at June 30, 2011.

95.     Under "Financial Outlook," the May 10, 2012 press release provided:

Based on slower volume sales and price fluctuations in international crude oil prices, as well as the PRC retail petroleum price fluctuations, the Company has adjusted its fiscal year end revenue and earnings guidance originally set in August 2011. The Company estimates it will generate revenues of approximately $520.0 million and net income of approximately $64.0 million (adjusted net of non-cash warrant derivative liability expenses) for the fiscal year ending June 30, 2012. The annual guidance is 8.0% ahead of last year's audited fiscal year end revenues of $481.6 million and in line with fiscal 2012 net income. Previous fiscal 2012 guidance was set before China's economy started slowing late last year following the PRC government's efforts to cool inflation and deflate a housing boom in the country. During this timeframe the Company also declined certain sales opportunities to maintain its margins during a period of rising inventory costs, as well as carefully managed its cash flow due to the large deposit paid for the Huajie Petroleum assets. The deposit of $87.0 million has been paid in cash generated through operations.

Economic indicators now show China's economic growth may have recently bottomed out and is starting to bounce back. A government reading on the manufacturing sector has recently shown improvement, as has an Organization for Economic Cooperation and Development ("OECD") forecast of future economic activity. OECD is an index of leading indicators and has estimated that China's economy has "regained momentum." According to UBS economist Tao Wang, "Looking ahead, there are already signs of stabilization and improvement." The Chinese government is now aiming for economic growth of 7.5% in 2012, lower than its goal for last year of about 8%. The World Bank predicts the Chinese economy will slow to an 8.2% growth rate this year but rebound to 8.6% in 2013. (CNNMoney, April 13, 2012).

96.     In the May 10, 2012 press release, Defendant Cai was quoted as saying:

Our two facilities continue to generate solid sales…Although rising fuel prices and the slow reaction of retail price increases implemented by the PRC impacted our margins during the third quarter, our earnings remain strong and we are well positioned for growth. We are working to finalize the Huajie Petroleum asset purchase, which will add another 100,000 metric tons to our storage capacity. As the largest private fuel distributor in Shanxi Province, we will continue to benefit from China's growing demand for petroleum products.

97.     In the May 10, 2012 press release, Defendant Toups was quoted as saying:

The International Energy Agency expects China to account for almost half of the world's oil demand growth over the next five years…We expect strong long-term revenue and earnings growth as China's increasing

industrialization continues to drive demand for fuel products. To meet this demand, we are continuing to work toward the closing of the Huajie asset acquisition. We remain focused on executing our business strategy, and we believe our commitment to achieving strong operational results will result in improved shareholder value.

98.    That same day, the Company filed its Form 10-Q with the SEC for the quarter ended March 31, 2012, emphasizing the earnings from the press release. The Form 10-Q was signed by Defendants Cai and Toups. Accompanying the 10-Q were separately executed SOX certifications of Defendant Cai and Toups falsely attesting to the accuracy of the 10-Q.

99.    On July 17, 2012, Longwei issued a press release announcing that "its revenues for its fourth quarter ended June 30, 2012 were up approximately 6% year-over year to $136 million" and "maintains its net earning guidance of $64 million."

100.    In the July 17, 2012 press release, Defendant Cai was quoted as saying:

We look forward to finalizing the Huajie Petroleum asset purchase, which will add another 100,000 metric tons to our storage capacity and solidify our position as one of the largest private fuel distributors in the PRC

101.    In the July 17, 2012 press release, Defendant Toups was quoted as saying:

We are pleased that we are on track with our net earnings guidance for the year, despite the international crude oil price fluctuations…We continue to manage our business to try to maintain our product profit margins. We have also balanced our cash flow while maintaining an $87 million deposit for the Huajie Petroleum asset purchase and managing our inventory position. We estimate an organic growth rate of approximately 7% to 8% for our two existing facilities this year due to the cooling of the international economic environment and its impact on the PRC. We have tried to make a conservative estimate tied to GDP growth. Our real driver for growth in this new fiscal year ending June 30, 2013 will be the ramp-up of the Huajie Petroleum facility.

102.    On September 13, 2012, Longwei issued a press release announcing its financial results for the fiscal year ended June 30, 2012. For 2012 fiscal year, the Company

reported revenues of $510.6 million and a GAAP income of $65.1 million or $0.65 per share and highlighted the following summary financial data:

**Fiscal Year 2012 Financial Highlights: (Year-over-Year, 12-Month Results)**

- Revenues increased 6.0% to $510.6 million, compared with $481.6 million.
- The Company's Taiyuan and Gujiao fuel storage facilities contributed revenues of $256.3 million and $233.8 million, respectively. Agency fees contributed $20.5 million to revenues.
- GAAP Net Income Attributable to Common Shareholders increased 4.1% to $65.1 million, compared with $62.5 million.
- Basic EPS increased to $0.65 per share and Diluted EPS was $0.61 per share, compared to $0.64 per Basic EPS and $0.62 per Diluted EPS for the fiscal year ended June 30, 2011.
- Current Assets increased $65.4 million or 45.9% to $208.0 million at June 30, 2012, compared with $142.6 million at June 30, 2011. The Company also maintained a deposit of $87.1 million paid in cash generated through operations toward the purchase of the assets of Huajie Petroleum.
- Stockholders' Equity increased $71.8 million or 27.4% to $333.5 million at June 30, 2012, compared with $261.7 million at June 30, 2011.

103. In the September 13, 2012 press release, Defendant Cai was quoted as saying:

We are pleased to deliver another year of record performance…With the continued strong demand for petroleum products in Shanxi Province, revenues and net income reached an all-time high. Once the Huajie Petroleum asset acquisition is completed, we are set to quickly ramp operations at the new facility to drive further growth in the new fiscal year.

104. In the September 13, 2012 press release, Defendant Toups was quoted as saying:

We continue to capitalize on the growing domestic demand for petroleum products in China and expect strong top-line and bottom-line results in fiscal 2013. The pending addition of the Huajie Petroleum facility in northern Shanxi Province will provide an additional catalyst for growth in the quarters ahead…On September 11, 2012, China's National Development and Reform Commission increased gasoline prices by 6.1 percent and diesel prices by 6.5

percent per metric ton due to rising international crude oil prices. The adjustment will enable us to raise prices on our petroleum products, which we believe will strengthen our revenues and profit margins. By carefully managing our inventory levels in line with oil price fluctuations, and continuing to execute our business strategy, we expect improved shareholder value over the long term.

105.     That same day, the Company filed its Form 10-K with the SEC for the fiscal year ended June 30, 2012, emphasizing the earnings from the press release.  The Form 10-K was signed by Defendants Cai, Toups, Y. Xue, Cole, and Dong.  Accompanying the 10-K were separately executed SOX certifications of Defendant Cai and Toups falsely attesting to the accuracy of the 10-K.

106.     The 2012 10-K included Defendant Anderson Bradshaw's materially false and misleading unqualified audit opinion dated September 12, 2012, which stated in relevant parts:

REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM

To The Board of Directors
Longwei Petroleum Investment Holding Limited
No.30 Dajingyu Street, Xiaojingyu Xiang, Wan Bailin District
Taiyuan City, Shanxi Province, China P.C. 030024

We have audited the accompanying consolidated balance sheets of Longwei Petroleum Investment Holding Limited and Subsidiaries (the Company) as of June 30, 2012 and 2011, and the related consolidated statements of operations and other comprehensive income, changes in stockholders' equity and cash flows for the years then ended. These consolidated financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these consolidated financial statements based on our audits.

We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States of America). Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. The company is not required to have, nor were we engaged to perform, an audit of its internal control over financial reporting. Our audit

included consideration of internal control over financial reporting as a basis for designing audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the company's internal control over financial reporting. Accordingly, we express no such opinion. An audit also includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of Longwei Petroleum Investment Holding Limited and Subsidiaries as of June 30, 2012 and 2011, and the results of its operations and its cash flows for the two-years then ended, in conformity with accounting principles generally accepted in the United States of America.

/s/ Anderson Bradshaw PLLC
Anderson Bradshaw PLLC
Salt Lake City, Utah
September 12, 2012

107.  Defendant Anderson Bradshaw's September 12, 2012 unqualified audit opinion was materially false and misleading because Longwei's financial statements did not present fairly, in all material respects, its consolidated financial position.

108.  On October 1, 2012, Longwei issued a press release announcing "its revenues for July and August 2012 were up 11.1% year-over-year to $88.6 million."  It also stated that "[f]or the two-month period ended August 31, 2012, Longwei reported its product sales volume increased 17.9% year-over-year to 74,908 metric tons ("mt") compared to 63,512mt for the two-month period ended August 31, 2011. On a quarter-over-quarter basis, product sales volume increased 6.1% for the first two-month period of the quarter ended September 30, 2012 compared to the first two-month period of the quarter ended June 30, 2012."

109.  In the October 1, 2012 press release, Defendant Cai was quoted as saying:

We are pleased to see an up-tick on our sales volume based on the demand growth at our Taiyuan and Gujiao facilities…This increase, combined with our closing on the Huajie facility, positions us for strong growth in fiscal 2013.

*****

The Huajie facility nearly doubles our storage capacity to a total of 220,000 metric tons and extends our reach into the fast growing industrial area of northern Shanxi Province…Our strong cash flow allowed us to close on the Huajie asset purchase using our own resources without dilution to our shareholders.

110.    In the October 1, 2012 press release, Defendant Toups was quoted as saying:

The northern Shanxi region's growing industrial and vehicle market demand, combined with our proven ramp-up performance of our Gujiao facility since 2010, which has now grown to account for approximately 48% of our total product sales, or US $233.8 million at fiscal year-end 2012, strengthens our confidence that we can quickly ramp up sales at the Huajie facility.

111.    On October 24, 2012, Longwei issued a press release announcing the update to its guidance updated its guidance for the fiscal year ended June 30, 2013 and provided:

Longwei expects revenue growth of approximately 26.6% to $646.3 million, and net income growth of approximately 24.2% to $77.6 million, adjusted for the warrant derivative liability, for the fiscal year ended June 30, 2013. The growth is driven primarily by the ramp-up of the Huajie facility and organic growth at the Company's two existing facilities. The Company forecasts it can maintain profitability within the range-band of its historical margins, as proven by its track record during times of volatile fluctuations in the price of international crude oil.

112.    In the October 24, 2012 press release, Defendant Cai was quoted as saying:

The Huajie acquisition nearly doubles our total storage capacity to 220,000 metric tons and extends our reach into the fast-growing industrial area of northern Shanxi Province…With the addition of the Huajie facility, we have strengthened our lead as the largest private fuel storage and distribution business in the province and are better positioned to capitalize on the rising demand for petroleum products in our regional market.

113.    In the October 24, 2012 press release, Defendant Toups was quoted as saying:

We were pleased to have closed on the Huajie asset purchase using our own cash resources without dilution to our shareholders, and we are now operational at the facility…We expect meaningful revenue contribution from Huajie beginning in the second half of fiscal 2013 as we ramp up our operations and sales efforts. Based on our experience during the Gujiao ramp-up phase in 2010, we are confident we can develop this new market quickly.

*****

As we continue to build upon the strong foundation we have established over our 17-year operating history, we remain committed to servicing our customers, increasing transparency in our reporting, and building value for our shareholders.

114.   On November 13, 2012, the company issued a press release announcing its financial results for the first quarter of 2013. For the quarter, the Company reported revenues of $133.4 million and a GAAP income of $0.18 per share and highlighted the following summary financial data:

**First Quarter Fiscal Year 2013 Financial Highlights: (Year-over-Year, 3-Month Results for Quarters Ended September 30, 2012 and 2011)**

- Product sales volume in metric tons ("mt") increased 17.8% to 110,587mt, compared with 93,862mt.
- Revenues increased 12.4% to $133.4 million, compared with $118.6 million.
- The Company's Taiyuan and Gujiao fuel storage facilities contributed revenues of approximately $70.6 million and $57.6 million, respectively. Agency fees contributed $5.2 million to revenues.
- Operating income increased 16.5% to $24.5 million, compared with $21.0 million.
- Non-GAAP net income attributable to common shareholders increased 16.7% to $18.3 million, compared to $15.7 million.
- Basic GAAP EPS remained unchanged at $0.18 per share for the three months ended September 30, 2012 and 2011. The Company's diluted GAAP EPS increased $0.02 or 13.3% to $0.17 from $0.15 for the three months ended September 30, 2012 and 2011, respectively.
- Tangible book value per share increased approximately 4.8% to $3.47 per share at September 30, 2012, compared with $3.31 per share at June 30, 2012.
- Total assets increased $17.7 million or 5.2% to $360.0 million at September 30, 2012, compared with $342.3 million at June 30, 2012.

115.    Under "Financial Outlook," the November 13, 2012 press release provided:

Longwei expects revenue growth of approximately 26.6% to $646.3 million, and net income growth of approximately 24.2% to $77.6 million, adjusted for the warrant derivative liability, for the fiscal year ending June 30, 2013. This growth rate does not account for any external financing for inventory, which could accelerate growth. The growth is driven primarily by the ramp-up of the Huajie facility and organic growth at the Company's two existing facilities. The Company forecasts it can maintain profitability within the range-band of its historical margins, as proven by its track record during times of volatile fluctuations in the price of international crude oil.

The GDP growth rate for Shanxi Province during 2011 was 13%, according to China Daily (March 13, 2012), and it is expected to be approximately 10% for 2012, which outpaces the general economic growth estimates of 7.5% in the PRC. The provincial government has estimated the fixed-asset investment in Shanxi to be RMB 5 trillion (approximately $790 billion) over the next five years, according to China Daily (September 13, 2011). The provincial government also recently announced an additional RMB 1 trillion (approximately $158 billion) in local development projects as part of the region's industrial stimulus plan, according to China Securities News (August 23, 2012). The Company believes its locations within Shanxi Province are advantageous to the growth of its business model.

The financial guidance for fiscal year 2013 reflects the Company's current estimates based on the conditions and trends known to the Company as of the date of this release. Results are subject to change based upon further review by management and future changes in market and operating conditions.

116.    In the November 13, 2012 press release, Defendant Cai was quoted as saying:

Our fiscal first quarter saw the completion of two very important initiatives…First, independent auditors completed a tax reconciliation of our SAT and SAIC filings with our SEC filings. The results verified no material differences. Second, we are very pleased to have completed our cash purchase of the Huajie Petroleum assets, which have nearly doubled our overall capacity to 220,000 metric tons. Together, we believe these accomplishments position us for strong shareholder value improvement.

117.    In the November 13, 2012 press release, Defendant Toups was quoted as saying:

We continue to capitalize on the growing domestic demand for petroleum products in China, and as proven in our first-quarter results, expect strong top-line and bottom-line results in fiscal 2013…Our Huajie facility has come on-line in October and will be a major catalyst for growth in the quarters ahead.

118. That same day, the Company filed its Form 10-Q with the SEC for the quarter ended September 30, 2012, emphasizing the earnings from the press release. The Form 10-Q was signed by Defendants Cai and Toups. Accompanying the 10-Q were separately executed SOX certifications of Defendant Cai and Toups falsely attesting to the accuracy of the 10-Q.

119. On November 26, 2012, Longwei issued a press release announcing "that its October 2012 product revenue increased 32.8% and sales volume increased 20.2% year-over-year" and provided:

For the month ended October 31, 2012, Longwei reported its revenue from product sales increased 32.8% to $53.1 million, compared to $40.0 million for the month ended October 31, 2011. Longwei's product sales volume increased 20.2% year-over-year to 41,811.4 metric tons ("mt"), compared to 34,780.0mt for the month ended October 31, 2011. The increase in revenues was primarily attributable to the increase in the average sales price of petroleum and the volume growth of the new Huajie facility, which contributed $9.2 million in product revenues during its first month in operation.

120. In the November 26, 2012 press release, Defendant Cai was quoted as saying:

The volume increase, combined with recent sales price increases and bringing the Huajie facility online, positions us for strong growth in fiscal 2013.

\*\*\*\*\*

The Huajie facility nearly doubles our storage capacity to a total of 220,000 metric tons and extends our reach into the fast-growing industrial area of northern Shanxi Province…Since opening the facility, we have signed

contracts with 16 major regional industrial companies in mining, steel and logistics, and we are in negotiations with several more.

121.    On January 2, 2013, Longwei issued a press release announcing "that it has raised its full-year guidance for the fiscal year ending June 30, 2013" and provided:

Longwei now forecasts FY13 revenue to increase 30.7% year-over-year to $667.3 million, versus prior forecasts of $646.3 million. Longwei also projects net income, adjusted for the warrant derivative liability, to grow approximately 23.0% year-over-year to $80.1 million, versus the prior forecast of $77.6 million. The growth is primarily driven by the better-than-expected ramp-up of the new Huajie facility. Longwei now expects revenue contribution from the Huajie facility of $121.0 million in FY13, up 21.0% from the prior forecast of $100.0 million. The guidance does not account for any potential external financing for inventory, which could accelerate growth.

122.    In the January 2, 2013 press release, Defendant Cai was quoted as saying:

The Huajie facility has captured significant market share in its region during its first three months of operations, leading to better-than-expected throughput. This, combined with continued organic growth of the Taiyuan and Gujiao facilities, positions us well for strong growth in FY13…We expect strong quarterly top-line and bottom-line results for the period ended December 31, 2012.

*****

We have worked hard to build a good reputation for the Company over our 17-year operating history. We believe our performance has earned us the trust of our customers and our shareholders, and we will vigorously defend our reputation

123.    Defendants' statements described above in ¶¶ 41-122 were materially false or misleading because they misrepresented or failed to disclose materially adverse facts that defendants knew or recklessly disregarded, including: (1) the Company's wholesale fuel sales were virtually nonexistent; (2) defendants failed to disclose a $32 million investment in a tourism project by the Company's subsidiary, Shanxi Zhonghe Energy Conversion Co.,

Ltd.; and (3) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

***Individual Defendants Falsely Stated There Were no Material Differences Between Longwei's PRC and SEC filings***

124.    On July 2, 2012, Longwei issued a press release announcing the completion of the Tax Reconciliation Report by Defendant CVWB, dated June 29, 2012.

125.    The Tax Reconciliation Report, commissioned by the Company's Audit Committee, reviewed and compared the Company's PRC subsidiary tax filings – corporate income tax ("CIT") and ("VAT") flings for the periods beginning July 1, 2009 to March 31, 2012 with the State Administration of Taxation ("SAT") and State Administration for Industry and Commerce ("SAIC") filings for the years ended December 31, 2011 and 2010 – with the Company's SEC filings.

126.    The Tax Reconciliation Report indicated that one of Longwei's PRC subsidiaries, Taiyuan Longwei Economy & Trading Ltd. ("Taiyuan Longwei"), paid all the corporate income and VAT tax to the Wanbailin District SAT for both the Taiyuan and Gujiao Facility for the period ending June 30, 2011.

127.    In its announcement, the Company reported that there were "no material differences" between its SEC filings in comparison to its SAT and SAIC filings and that "[t]he Audit Committee has advised the board that in its view, the findings of the Report further support the integrity of the Company's accounting system and financial reporting in the PRC and the US."

128.    Defendant Toups was listed as the point of contact for the Company in the announcement.

129. Defendants' statements described above in ¶¶ 124-128 were materially false or misleading because they misrepresented or failed to disclose materially adverse facts that defendants knew or recklessly disregarded, including: (i) the findings of the Tax Reconciliation Report is contradicted by Longwei's 2011 10-K and (ii) the tax payments disclosed in the Tax Reconciliation Report is contrary to PRC law and practice.

## THE TRUTH BEGINS TO EMERGE

130. On January 3, 2013, analyst firm Geoinvesting.com issued an analyst report. The report is available at http://seekingalpha.com/article/1092561-longweipetroleum-the-most-brazen-china-based-u-s-listed-rto-to-date?source=yahoo and is incorporated herein by reference. The report revealed the following that rendered the Company's financial statements materially false and misleading:

(a) that the Company failed to disclose a related party transaction involving a $32 million investment made by one of Longwei's subsidiaries into a tourism business. Following the investment, Longwei owned 90% of the venture and Defendant Cai owned 10% of it.

(b) that the filings made in China reveal that contrary to the Company's SEC filings, Defendant Cai is the listed as a 5% owner of three of the Company's operating subsidiaries in China: Shanxi Zhonghe Energy Conversion Ltd., Taiyuan Longwei, and Shanxi Heitan Zhingyou Petrochemical Co. Ltd.

(c) that the Company's wholesale fuel sales are virtually nonexistent, contrary to the Company's public statements, based on surveillance footage of the Company's two fuel storage depots – the Taiyuan and Gujiao Facilities– and interviews of locals residents living near both facilities.

47

131.   The report, in summary fashion, provided the following summary of its Geoinvesting.com's findings:

**Part I - Wholesale Fuel Sales Are Virtually Nonexistent**

1.     7 weeks (October 26 to December 13, 2012) of 24/7 time-lapse video surveillance of LPH's Taiyuan and Gujiao fuel storage depots detected only **5 tanker trucks** fueling at the two facilities, **combined**.

2.     In recent press releases and 8-K filings, LPH exaggerated its main Taiyuan and Gujiao facilities' November 2012 sales by a factor of over **800 times**.

3.     In October 2012, prior to conducting our video surveillance, we discovered that the railroad spurs to the Taiyuan and Gujiao facilities were covered with vegetation and appeared unused in quite some time.

4.     Locals that we interviewed said that LPH's business had been bad for a long time. We were told that the Gujiao facility had been almost completely idled since 2011, when it began losing money on fuel it sold due to unstable fuel prices since 2011.

5.     From December 9 to 22, 2012, we conducted 13 days of 24/7 time lapse video surveillance of the newly-opened Huajie fuel storage depot and detected zero tanker trucks being fueled at the facility.

6. CFO Mike Toups, by simply looking out of the Taiyuan office windows at the nearly idled tanker fueling station next door should have easily detected and prevented LPH's brazen fraud given the amount of time he claims to spend at the facility.

**Part II - Legal Issues Abound**

1.     LPH never disclosed an investment of $32 million (out of a total commitment of $222 million) in a Tourism business made by its subsidiary Shanxi Zhonghe Energy Conversion Co., Ltd. ("Zhonghe").

2.     LPH has eerie ties to Ming Zhao and Puda Coal Group ("PUDA") through its Zhonghe and Huajie facility acquisitions. Investors may remember that Ming Zhao was the mastermind behind the massive PUDA fraud that the GeoTeam uncovered - a fraud which Ming Zhao tried to conceal with a bogus private takeover offer of $12.00 per share while the stock was halted.

3.     LPH's minority interests in Taiyuan Longwei, owned by Mr. Cai Yongjun, are not reflected in its balance sheet as non-controlling interests.

4.     In its 2011 10-K, LPH claimed that Shanxi Heitan Zhingyou Petrochemical Co., Ltd ("Zhingyou") was an operating subsidiary that **had income tax due** during the financial year ending June 30, 2011. However, in its 2012 10-K, LPH claimed that Zhingyou was a non-operating subsidiary in the financial year ended June 30, 2012 and **did not have** income tax due on June 30, 2011.

5.     The disclosed SAT/SAIC filed by LPH on June 29, 2012 for the **calendar year 2011** claimed that only Taiyuan Longwei Economic & Trade Co., Ltd. generated revenue and paid income tax and VAT tax. This contradicts the annual report (SEC) for the financial year ended on June 30, 2011 during which Zhingyou was still the operating subsidiary for the Gujiao facility.

132.     The GeoInvesting.com report stated that, based on SEC filings, Longwei's PRC subsidiary Zhingyou was legally required to pay for the corporate income tax and VAT tax for the Guijiao Facility for the period ending June 30, 2011. Such payment should have been made to Zhingyou's own SAT office located in the Jiancaopin District.

133.     Yet, the Tax Reconciliation Report indicated that Taiyuan Longwei (and not Zhingyou) paid the corporate income tax and VAT tax for the Guijiao Facility for the same period to the Wanbailin District SAT (and not the Jiancaopin District SAT), which is contrary to PRC law and practice.

134.     Therefore, the Company's July 2, 2012 announcement of no material differences between its SEC filings and SAT and SAIC filings, based on Defendant CVWB's Tax Reconciliation Report was false and misleading.

135.     This announcement shocked the market and caused the Company's stock to fall $1.68/share or nearly 73% on January 3, 2012; all trading was halted in the Company's stock later that day.

136.     On January 28, 2013, Defendant Cole abruptly resigned as a Director of the Company and Chairman of the Audit Committee. In his resignation letter, he stated that the Board of Directors had refused to approve certain resolutions presented by the Audit

Committee relating to the allegations made against the Company by Geoinvesting.com, such as the undertaking of an independent investigation, and engagement of independent counsel and forensic accountants to carry out such investigations.

## INDIVIDUAL DEFENDANTS BREACHED THEIR FIDUCIARY DUTIES

137. Each Individual Defendant, by virtue of his or her position as an officer and/or director, owed to the Company and to its shareholders the fiduciary duty of loyalty and good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of Longwei, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and/or directors of the Company have been ratified by he remaining Individual Defendants who collectively comprised all of Longwei's Board.

138. As alleged herein, the Individual Defendants have breached their fiduciary duties by: (i) knowingly and substantially participating or acquiescing in the issuance of public documents and statements issued or disseminated in the name of the Company (or in their own name) that were materially false and misleading; (ii) failing to implement an effective system of internal and financial controls; and (iii) failing to implement corrective measures to protect Longwei form incurring further harm caused by the improper statements.

139. The Individual Defendants also failed to prevent the other Individual Defendants from taking such illegal actions. In addition, as a result of the Individual Defendants' illegal actions and courses of conduct. The Company is now the subject of several class action lawsuits that allege violations of securities laws. As a result, Longwei has expended, and will continue to expend, significant sums of money and its reputation has been severely damaged.

## AUDITOR DEFENDANTS AIDED AND ABETTED THE INDIVIDUAL DEFENDANTS' BREACHES OF THEIR FIDUCIARY DUTIES

140. As Longwei's auditor, the Auditor Defendants knew that the Individual Defendants owed the company a fiduciary duty.

141. As explained below, the Auditor Defendants also knew that the Individual Defendants were in breach of their fiduciary duties because the Auditor Defendants visited the Company's Taiyuan and Gujiao storage facilities and knew they sat idle, which rendered the Company's financial statements during the Relevant Period materially false and misleading.

142. As explained below, the Auditor Defendants also knew that the Individual Defendants were in breach of their fiduciary duties because the Auditor Defendants knew that the Company's statements concerning the reconciliation of its SEC and SAT and SAIC filings were materially false and misleading.

143. On November 10, 2011, Defendant Toups again touted the Auditor Defendants' field work in China in an earnings conference call, stating:

> [W]e've moved forward with Child Van Wagoner. ***They're obviously very familiar and have been out to visit the assets being acquired, and all that.***"

(Emphasis added)

144.   In the same earnings conference call, Defendant Toups also touted the Auditing Defendant's field work with regards to the Company's SEC-SAIC reconciliation, stating:

> [W]e had initially pulled the reports, ***but on the advice of our auditors, they wanted to go pull the reports themselves, go to the agency to pull the report***. So, it's really just become a timing function for them to pull that, but they are starting to pull numbers together and it is something that is in the works."

(Emphasis added)

145.   On November 14, 2012, Defendant Toups had the following exchange with analyst Kevin Chen, further expounding on the Auditor Defendants' field work in China:

Michael Toups
***They send their US based team***, they also have an office out of Hong Kong that they service that worth ***but send the US team to come in at least once a year often times, two or three times a year to meet the company to meet with Cai and again, dealing directly with our audit committee on a yearend audit***.

Kevin Chen
And I assume when they go to your office, then for the year end kind of auditing or whatever, do they check some documents, maybe some important ones against and verify those documents with government offices and maybe your vendors and customers do something like that?

Michael Toups
They do and certainly they follow all the GAAP procedures would be the independent audit verification. So they verify our accounts receivable, they verify our advances to suppliers, certainly verify all of our licenses, our asset transfers. So all of that again, they have to have completed because they in turn are then audited and inspected by the PCOB who comes in and looks through their books. Obviously with the Chinese company, they really look at it under a microscope based on some of the other circumstances within the space but we feel like we've had a good inspection and again, I try to be as transparent as possible with all of our activities.

Kevin Chen
That's very good and it sounds to me that in their regard your auditing process is probably, I don't want to discourage you from upgrading to a big profile. We speak for, I guess investors are constantly heard some problem

that they outsourced the auditing to their kind of China ventures something but in your case it's kind of really American auditor based on (inaudible) directly go into your office floor. That's great. ***And one last question, do they only do the kind of physical check or total your office in Taiyuan during annual reporting or they sometimes go there during quarter reporting too?***

Michael Toups
***Obviously with the yearend audit is when they'll do some of their larger audit procedures, but they (inaudible) two or three times a year. So they'll come and they check certain things certainly with the acquisition. They were very involved with us on that in terms of looking at their appraisals, doing the physical inspections, working with those in terms of the deposits that we had on hand interview the seller.*** So I mean it was a fairly detailed procedures that they went through certainly at the year and now that we've got this acquisition wrapped up.

(Emphasis added)

146.    The Auditor Defendants therefore knew, and aided and abetted, the Individual Defendants' issuance of: (i) materially false and misleading financial statements throughout the Relevant Period; and (ii) materially false and misleading statements concerning the lack of material differences between the Company's SEC and SAT and SAIC filings.

147.    Each of the materially false and misleading statements described above was the result of the Auditor Defendants' knowing and substantial assistance and encouragement to the Individual Defendants' breaches of their fiduciary duties.

148.    The Auditor Defendants therefore aided and abetted the Individual Defendants' breaches of their fiduciary duties. As a result, the Auditor Defendants are jointly responsible with the Individual Defendants for the damages resulting from those breaches.

## ISSUANCE OF MISLEADING STATEMENTS

149. The statements detailed above were inaccurate and misleading, contained untrue statements of material facts, omitted facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein. Individual Defendants, by virtue of their control over and/or receipt of information reflecting the true facts regarding Longwei, either caused the issuance of the materially misleading statements or failed to timely correct such statements. These Defendants each had a duty to ensure that such statements were accurate and contained all facts required to be stated therein, and that there were no omissions of material facts that would make the statements misleading. In the exercise of reasonable care, the Individual Defendants should have known of the material misstatements contained in the Company's press releases, SEC filings, and in statements made by Defendants Cai and also should have known of the omissions of material facts that were necessary to make the statements made therein not misleading. As such, the Individual Defendants breached their fiduciary duties.

## DAMAGES TO LONGWEI

150. On March 22, 2013, NYSE announced its final determination to remove the common stock of Longwei from listing and the delisting became effective on April 1, 2013. Although it is not yet clear by how much the misleading financial statements will have to be restated, Longwei has been, and will continue to be, severely damaged and injured by the Individual Defendants' misconduct.

151. As a direct and proximate result of the Individual Defendants' conduct, Longwei has expended and will continue to expend significant sums of money. Such expenditures include, but are not limited to:

(a) legal fees associated with the lawsuits filed against the Company for violations of the federal securities laws;

(b) loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Individual Defendants' false statements and lack of candor to the marketplace; and

(c) loss of revenues and profits due to any subsequent restatements.

## DERIVATIVE ALLEGATIONS

152. Plaintiff brings this action derivatively and for the benefit of Longwei to redress injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of Longwei, gross mismanagement, abuse of control, and unjust enrichment, as well as the aiding and abetting thereof.

153. Longwei is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

154. Plaintiff is, and at all relevant times has been, a Longwei shareholder. Plaintiff will adequately and fairly represent the interests of Longwei in enforcing and prosecuting its rights, and, to that end, have retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

## DEMAND FUTILITY ALLEGATIONS

155. Plaintiff incorporates by reference and re-alleges each and every allegation stated above as if fully set forth herein.

156.    A pre-suit demand on the Board of Longwei is futile and, therefore, excused. At the time of filing of this action, the Board consisted of the following three (3) individuals: Defendants Cai, Y. Xue and Dong (collectively, the "Director Defendants"). Plaintiff need only demonstrate that a majority of the board is interested or lacks independence. Thus, Plaintiff need only allege demand futility as to two (2) of the three directors that were on the Board at the time this action was commenced.

157.    In this case, the Company's 2012 Proxy Statement indicates that the Company itself does not consider Defendants Cai and Y. Xue to be "independent" because they also serve or have served as the Company's executive officers. Moreover, Defendant Cai is named as defendants in the related securities fraud class action, which renders their ability to impartially consider a demand even more doubtful. Accordingly, a demand upon these Defendants is futile and, therefore, excused.

158.    Furthermore, demand is excused as to all of the Director Defendants because each one of them faces, individually and collectively, a substantial likelihood of liability as a result of their scheme, which renders them unable to impartially investigate the charges and decide whether to pursue action against themselves and the other perpetrators of the scheme.

159.    Specifically, Defendant Cai (as the Chairman and CEO), was ultimately responsible for the Company's operations, financial statements, and internal controls. However, in complete abdication of his fiduciary duties, Defendant Cai either participated in or was recklessly unaware of the fraudulent scheme to inflate the Company's earnings and revenue figures, which was intended to make the Company appear more profitable and

attractive to investors. As a result, Defendant Cai breached his fiduciary duties. Thus, Defendant Cai faces a substantial likelihood of liability, and demand upon him is futile.

160. Likewise, Defendant Dong, as a member of the Audit Committee, reviewed and approved the false financial statements. As a member of the Audit Committee during the relevant period, Dong had additional and heightened responsibilities for ensuring the reliability of financial reporting and compliance with applicable laws and regulations. The Audit Committee was also tasked with reviewing the quality, adequacy, and effectiveness of the Company's internal and financial controls. Dong fell well short of their duties. As alleged herein, Dong knowingly or recklessly made and allowed the Company to make improper statements related to Longwei's financial results and business operations. Dong breached their fiduciary duty of loyalty and good faith because they participated in the wrongdoing described herein. Thus, Defendant Dong faces a substantial likelihood of liability for her breach of fiduciary duties. Consequently, Defendant Dong faces a substantial likelihood of liability and any demand upon her is futile.

161. Defendants Cai, Y. Xue and Dong, as members of the Board, were and are subject to the Code of Ethics. The Code of Ethics went well beyond the basic fiduciary duties required by applicable laws, rules, and regulations. Specifically, the Code of Ethics required these Defendants to also adhere to Longwei's standards of business conduct. In particular, under the Code of Ethics, Defendants Cai, Y. Xue and Dong were bound to ensure that "[t]ransactions between the Company and outside individuals and organizations must be promptly and accurately entered in our books in accordance with generally accepted accounting practices and principles" and "must always be alert to and comply with the securities laws and regulations of the United States, China, and other countries

where the Company may conduct its business. The Code explicitly states that "[n]o one should rationalize or even consider misrepresenting facts or falsifying records." Defendants Cai, Y. Xue and Dong did not comply with these requirements. As stated herein, Defendants Cai, Y. Xue and Dong violated the Code of Ethics by causing the Company to make or allowing the Company to make improper financial and business disclosures in its public press releases and filings with the SEC. Because these Defendants violated the Code of Ethics, they face a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

162.    Moreover, as stated herein, Defendant Cai signed the Company's Form 10-Q for the period ended March 31, 2010 filed on May 17, 2010. Accordingly, Defendant Cai faces a substantial likelihood of liability for making and approving the misleading statements contained therein. As a result, any demand upon him is futile.

163.    As further stated herein, Defendants Cai and Y. Xue signed the Company's Form 10-K for the fiscal year ended June 30, 2010 filed on September 28, 2010. Accordingly, Defendants Cai and Y. Xue faces a substantial likelihood of liability for making and approving the misleading statements contained therein. As a result, any demand upon him is futile.

164.    Moreover, as stated herein, Defendant Cai signed the Company's Form 10-Q for the period ended September 30, 2010 filed on November 15, 2010. Accordingly, Defendant Cai faces a substantial likelihood of liability for making and approving the misleading statements contained therein. As a result, any demand upon him is futile.

165.    Moreover, as stated herein, Defendant Cai signed the Company's Form 10-Q for the period ended December 31, 2010 filed on February 14, 2011. Accordingly,

Defendant Cai faces a substantial likelihood of liability for making and approving the misleading statements contained therein. As a result, any demand upon him is futile.

166. Moreover, as stated herein, Defendant Cai signed the Company's Form 10-Q for the period ended March 31, 2011 filed on May 16, 2011. Accordingly, Defendant Cai faces a substantial likelihood of liability for making and approving the misleading statements contained therein. As a result, any demand upon him is futile.

167. Moreover, as stated herein, Defendants Cai and Y. Xue signed the Company's Form 10-K for the fiscal year ended June 30, 2011 filed on September 13, 2011. Accordingly, Defendants Cai and Y.Xue face a substantial likelihood of liability for making and approving the misleading statements contained therein. As a result, any demand upon them is futile.

168. Moreover, as stated herein, Defendant Cai signed the Company's Form 10-Q for the period ended September 30, 2011 filed on November 9, 2011. Accordingly, Defendant Cai faces a substantial likelihood of liability for making and approving the misleading statements contained therein. As a result, any demand upon him is futile.

169. Moreover, as stated herein, Defendant Cai signed the Company's Form 10-Q for the period ended December 31, 2011 filed on February 9, 2012. Accordingly, Defendant Cai faces a substantial likelihood of liability for making and approving the misleading statements contained therein. As a result, any demand upon him is futile.

170. Moreover, as stated herein, Defendant Cai signed the Company's Form 10-Q for the period ended March 31, 2012 filed on May 10, 2012. Accordingly, Defendant Cai faces a substantial likelihood of liability for making and approving the misleading statements contained therein. As a result, any demand upon him is futile.

171.   As further stated herein, Defendants Cai and Y. Xue signed the Company's Form 10-K for the fiscal year ended June 30, 2012 on September 13, 2012. Accordingly, Defendants Cai and Y. Xue face a substantial likelihood of liability for making and approving the misleading statements contained therein. As a result, any demand upon them is futile.

172.   Moreover, as stated herein, Defendant Cai signed the Company's Form 10-Q for the period ended September 30, 2012 filed on November 13, 2012. Accordingly, Defendant Cai faces a substantial likelihood of liability for making and approving the misleading statements contained therein. As a result, any demand upon him is futile.

173.   Defendant Cai also breached their fiduciary duties of loyalty by either knowingly or recklessly making improper statements in the Company's press releases and SEC filings regarding the Company's financial results and business operations. In particular, these Defendant made improper statements regarding:

(a) the overstatement of revenue;

(b) the omission of the Company's substantial tourism investments; and

(c) the effectiveness of the Company's internal controls over financial reporting.

These improper statements were made in bad faith and in furtherance of a scheme to conceal the true nature of the Company's business operations and financial results. Accordingly, Defendant Cai cannot impartially consider a demand to initiate litigation because they face a substantial likelihood of liability. Demand upon him is therefore futile.

174.   Defendants Cai, Y. Xue and Dong also breached their fiduciary duty of loyalty by failing to ensure that the Company had an adequate system of internal and financial controls in place to prevent the dissemination of improper public disclosures. As

indicated by the multitude of improper statements alleged herein, Longwei did not have in place, or failed to properly implement, an effective system of internal financial controls. Indeed, Defendants Cai, Y. Xue and Dong knowingly or recklessly disregarded any such controls in directly and/or indirectly issuing improper statements in the Company's press releases and filings with the SEC regarding the Company's financial results and business operations. Accordingly, these Defendants breached their fiduciary duties in failing to implement such financial controls and, therefore, face a substantial likelihood of liability. Demand upon them is futile.

175.    Furthermore, demand in this case is excused because the current and former directors named as defendants in this action control the Company and are beholden to each other.

176.    Specifically, Defendants Cai and Y. Xue dominates and controls the other Board members. As off the filing of the Company's 2012 Proxy Statement, Defendant Cai and Y. Xue each beneficially own approximately 33% of the Company's common stock. Collectively, they are beneficially owners of about two-thirds of the Company.

177.    In addition, demand on the Director Defendants is futile because when given an opportunity to commence an internal investigation that would reveal the extent of the violations, and thus the potential harm to the Company, the Board so restricted the scope of the inquiry as to render it incomplete and ineffective. Even though more than seven months have passed since the initial disclosure that there were reporting violations and that some of the Company's financial statements would need to be restated, the Company has yet to quantify the magnitude of the violations, to restate any of its financial statements, or to bring an action against any of the Company's current or former officers and directors.

Thus, because when given the opportunity to fully reveal the extent of wrongdoing and the magnitude of the misreporting, the Director Defendants instituted a needlessly restricted and ineffective investigation, demand is excused.

178. Longwei has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Director Defendants and the current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Longwei any part of the damages Longwei suffered and will continue to suffer thereby. Thus, any demand on these Defendants would be futile.

179. Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgments as it was based on bad faith, intentional, reckless, or disloyal misconduct. Thus, none of the Director Defendants can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As a majority of the Director Defendants face a substantial likelihood of liability, they are self interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

180. The acts complained of herein constitute violations of fiduciary duties owed by Longwei's officers and directors and these acts are incapable of ratification.

181. The Director Defendants may also be protected against personal liability for their acts of mismanagement and breach of fiduciary duty alleged herein by directors' and officers' liability insurance which they caused the Company to purchase for their

protection with corporate funds, i.e., monies belonging to the stockholders of Longwei. The directors' and officers' liability insurance policy covering the Director Defendants may contain provisions that eliminate coverage for any action brought directly by the Company against these Defendants, known as, inter alia, the "insured-versus-insured exclusion." As a result, if the Director Defendants were to sue themselves or certain of the officers of Longwei, there would be no directors' and officers' insurance protection. Accordingly, the Director Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate a recovery. Thus, demand on the Director Defendants is futile and, therefore, excused.

182. If there is no directors' and officers' liability insurance, then the current directors will not cause Longwei to sue the Individual Defendants named herein, since they will face a large uninsured individual liability. Accordingly, demand is futile as well.

183. Thus, for the reasons set forth above, at least a majority, if not all, of the Individual Defendants currently serving on the Board cannot consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

184. Overall, the Company will undoubtedly expend millions of dollars in internal investigations, restating its financial statements, and defending the securities class actions. It may be liable for millions of dollars in damages if it loses or settles the related securities fraud class actions. Furthermore, the Company is potentially subject to governmental investigations. Moreover, the Company's reputation has been severely damaged, particularly in light of its delisting by the NYSE. The Company has also wasted a

substantial amount of money in compensating the Individual Defendants as directors and officers. Its market capitalization has been severely diminished and its prospect of raising equity in the future is questionable. All of this substantial damage stems proximately from the Individual Defendants' conscious and willful breaches of their fiduciary duties, abuse of control, and other malfeasance.

## COUNT I

### Against Individual Defendants for Breach of Fiduciary Duties

185. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

186. Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Longwei's business and affairs, particularly with respect to issues regarding the Company's financial viability.

187. Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

188. The Individual Defendants' conduct set forth herein was due to their intentional, reckless, or negligent breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally, recklessly, or negligently breached or disregarded their fiduciary duties to protect the rights and interests of Longwei.

189. In breach of their fiduciary duties owed to Longwei, the Individual Defendants willfully participated in misrepresentation of the Company's financial condition, failed to correct the Company's public statements, and failed to properly oversee

Longwei's business, rendering them personally liable to the Company for breaching their fiduciary duties.

190. The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent its financial condition and they failed to correct the Company's public statements. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of Longwei's securities.

191. These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

192. As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Longwei has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, Defendants are liable to the Company.

## COUNT II

### Against Individual Defendants for Abuse of Control

193. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

194. The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Longwei, for which they are legally responsible.

195. As a direct and proximate result of the Individual Defendants' abuse of control, Longwei has sustained significant damages. As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations of candor, good faith, and loyalty, Longwei has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

## COUNT III

### Against Individual Defendants for Gross Mismanagement

196. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

197. By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Longwei in a manner consistent with the operations of a publicly-held corporation.

198. As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, Longwei has sustained and will continue to sustain significant damages.

199. As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

200. Plaintiff, on behalf of Longwei, has no adequate remedy at law.

## COUNT IV

### Against Individual Defendants for Unjust Enrichment

201. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

202. By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Longwei.

203. During the Relevant Period, the Individual Defendants either received bonuses, stock options, or similar compensation from Longwei that was tied to the financial performance of Longwei or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

204. Plaintiff, as a shareholder and representative of Longwei, seek restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits, and other compensation, including any performance-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary duties.

## COUNT V

**Against Auditor Defendants for Aiding and Abetting Breach of Fiduciary Duty**

205. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

206. As Longwei's auditor, Auditor Defendants knew that the Individual Defendants owed the Company a fiduciary duty.

207. Auditor Defendants also knew that the Individual Defendants were in breach of their fiduciary duties.

208. Auditor Defendants knowingly provided substantial assistance and encouragement to the Individual Defendants in their breaches of their fiduciary duties.

209. Auditor Defendants therefore aided and abetted Individual Defendants' breaches of fiduciary duties. As a result, Auditor Defendants is jointly responsible with the Individual Defendants for the damages resulting from those breaches.

## PRAYER FOR RELIEF

FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all defendants as follows:

A.     Declaring that Plaintiff may maintain this action on behalf of Longwei and that Plaintiff is an adequate representative of the Company;

B.     Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Longwei;

C.     Determining and awarding to Longwei the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

D.     Directing Longwei and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Longwei and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's Bylaws or Articles of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies:

1.     a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

2.      a provision to permit the shareholders of Longwei to nominate at least three candidates for election to the Board; and

3.      a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations.

E.      Awarding Longwei restitution from defendants;

F.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

G.      Granting such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a jury trial.

Dated:  October 23, 2014                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

s/ Kevin Chan
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
Kevin K. Chan, Eq. (KC 0228)
275 Madison Avenue, 34th Floor
New York, NY  10016
Phone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com
Email: kchan@rosenlegal.com

Attorneys for Plaintiff

## <u>VERIFICATION</u>

I, Todd Okimoto, am the plaintiff in the within action and am a citizen of the State of Hawaii. I have read the foregoing amended complaint and know the contents thereof. The allegations of the complaint are true of my personal knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this __23__, of October 2014.


_____
Todd Okimoto

## CERTIFICATE OF SERVICE

I hereby certify that on this, the 23rd day of October 2014, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF System and by First Class Mail to the parties below:

Longwei Petroleum Investment Holding Limited
c/o Vcorp Services, LLC
36 South 18th Avenue, Suite D
Brighton, CO  80601

Youngjun Cai
Longwei Petroleum Investment Holding Limited
c/o Vcorp Services, LLC
36 South 18th Avenue, Suite D
Brighton, CO  80601

Yongping Xue
Longwei Petroleum Investment Holding Limited
c/o Vcorp Services, LLC
36 South 18th Avenue, Suite D
Brighton, CO  80601

Dora Dong
Longwei Petroleum Investment Holding Limited
c/o Vcorp Services, LLC
36 South 18th Avenue, Suite D
Brighton, CO  80601

s/ Kevin Chan
Kevin K. Chan